Tagged for Publication



**ORDERED in the Southern District of Florida on April 19, 2011.**

John K. Olson, Judge
United States Bankruptcy Court

___

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov**

**In re**:

    **New River Dry Dock, Inc.**,

             Debtor.
_____/

Case No. 06-13274-JKO

Confirmed Chapter 11

**ORDER:**

**(1) Denying Kit Denison & Marine Realty, Inc.'s Compound Motion [ECF No. 489] in its Entirety;**

**(2) Denying Kit Denison & Marine Realty, Inc.'s Motion for Summary Judgment [ECF No. 486];**

**(4) Granting-in-Part Marina Mile Shipyard's Motion for Summary Judgment on Disgorgement Issues [ECF No. 521].**

On September 22, 2010 Christopher "Kit" Denison ("Denison") and Marine Realty, Inc. ("Marine") filed a Motion to Discharge Order to Show Cause and Strike Various Motions, and Vacate Various Orders (hereinafter, "Motion to Discharge and Strike Various Motions") *See* [ECF No. 489]. Marina Mile Shipyard filed its Response in Opposition to the Motion to

Discharge and Strike Motions on October 19, 2010. *See* [ECF No. 520]. Denison argues that his motion should be granted because he and Marine have been released from all liability by the Confirmation Order and Plan in the underlying case.

On September 16, 2010, Denison and Marine filed a Motion for Summary Judgment to Discharge this Court's Order to Show Cause and Strike Motion by Marina Mile Shipyard for Disgorgement of Compensation or to Compel. *See* [ECF. No. 486]. On October 19, 2010, Marina Mile Shipyard filed its Response in Opposition. *See* [ECF No. 519]. On October 25, 2010, Denison and Marine filed a reply to the response. *See* [ECF. No. 529]. Denison and Marine's arguments in favor of this motion rest on substantially the same assertions as those contained in the Motion to Discharge and Strike Various Motions.

On October 20, 2010, Marina Mile Shipyard ("MMS") filed a Cross-Motion for Summary Judgment on Disgorgement Issues. *See* [ECF. No. 521]. On October 29, 2010, Denison filed a Certification in Opposition to MMS's Cross Motion for Summary Judgment. *See* [ECF No. 531]. On November 1, 2010, MMS filed its Reply to Certification by Denison in Opposition to Cross-Motion for Summary Judgment.

MMS contends that it is entitled to summary judgment on its Cross-Motion because Denison (and Marine) did not disclose an interest adverse to the estate and that disgorgement is the proper remedy. MMS also asks for pre-judgment interest and fees. For the following reasons, Denison and Marine's motions are denied and MMS's motion is granted in part.

*Background*

The core dispute here arises from a motion by MMS, an unsecured creditor of New River Dry Dock, Inc. (the "Debtor"), to disgorge compensation paid to Denison and Marine. Denison and

Marine were employed by the bankruptcy estate to sell a marina (the "Dry Dock Property"), and the order approving employment was entered on October 3, 2006. At that time of the order approving employment, it was unknown to MMS or me that Denison and Marine had a prior relationship with the eventual purchaser of the Dry Dock Property, Steven M. Israel ("Israel"). The relationship was not disclosed as required by Fed. R. Bankr. P. 2014, and it was only later brought to my attention that Denison had acted as a selling broker for Israel before he became a broker for the bankruptcy estate.

After his employment was authorized, Denison contacted Israel about the Dry Dock Property and suggested a $13,800,000.00 "stalking-horse" bid. The Dry Dock Property had been appraised for $20,000,000.00. On February 13, 2007, the Debtor entered into a contract to sell substantially all of its assets to Israel (and assigns, including SPVEF-SKID, LLC). Because there was no higher or better offer, the sale to SPVEF-SKID, LLC was concluded on June 11, 2007 for $12,250,000.00.

The fact that the Dry Dock Property sold for much less than its appraised value might not have appeared suspicious had there been no prior relationship between Denison and Israel.[1] Numerous facts indicate that Denison did not, however, undertake his fiduciary role in good faith. For example, Denison agreed to reimburse Israel for half of a $75,000.00 finder's fee ($37,500.00) without court approval. Furthermore, on September 12, 2007, a short time after closing on the Dry Dock Property, Denison entered into an agreement to manage the Dry Dock Property. Also on September 12, 2007, he acquired a 4 % interest in SKID, LLC ("SKID"), the managing member of the buying entity, SPVEF-SKID, LLC. The public filings for SKID indicate that it was formed two days before the motion to approve the sale of the Dry Dock Property. Significantly, an

---

[1] Indeed, in light of collapsing real estate prices in early 2007, substantially reduced offering prices were more common than not.

April 25, 2007 email on which Denison was copied stated that Denison's role as a "third-party manager or member of LLC" needed to be discussed immediately. Again, the closing was June 11, 2007. Denison's possible management and membership role in SKID was therefore contemplated prior to the closing of the Dry Dock Property sale, and Denison's role as manager or member of SKID was being discussed while he still owed fiduciary duties to the bankruptcy estate. Startlingly, and as discussed below, the very name "SKID" was a conjunction of the names "Steve Israel" and "Kit Denison." Again, Denison did not disclose his relationship with Israel during the pendency of the Dry Dock Property deal.

Based on these facts, MMS asks me to enter an order directing Denison and Marine to disgorge the commission earned as a result of the Dry Dock Property sale to Israel. The total commission paid to Denison and Marine was $535,000.00, but only $490,000.00 was authorized by court order. In a prior proceeding, I ordered the return of the unauthorized portion ($45,000.00) to the Plan Administrator, so only the remaining $490,000.00 is at issue in the motions before me.

### *The Motion to Discharge and Strike Various Motions is Denied*

Denison's Motion to Discharge and Strike Various Motions is not well articulated and is lacking in substance. The initial allegations are just those, allegations with no support in fact or law. The only argument in the motion that is supported by any discernable evidence or law is that Article IX, Section 9.2 of the Debtor's Reorganization Plan granted "absolution" to all pre-confirmation professionals, allegedly insulating Denison and Marine from disgorgement of fees for pre-confirmation services. Denison argues that investigation or prosecution by the Plan Administrator cannot be undertaken because: (1) this court no longer has subject matter jurisdiction; (2) this court cannot exercise personal jurisdiction over Denison; and (3) the Plan Administrator and

MMS have no standing to assert the disgorgement claim. These arguments were offered in support of a prior motion for protective order which sought to stop discovery in this case until resolution of the motions addressed in this order. I denied the motion for protective order and it has been appealed.

A.    Subject Matter Jurisdiction

The bankruptcy court has a continuing duty to review professional fees. *Dery v. Cumberland Casualty and Surety Co.*, 468 F.3d 326, 330 (6th Cir. 2006). "Dismissal of a case or a private agreement between the debtor and [professional] cannot abrogate the bankruptcy court's statutorily imposed duty to review fees" under 11 U.S.C. § 330. *Id.* Section 330 is the only method by which the court may police professional fees. *Id.* It would be improper to allow fees which were obtained through dishonesty and non-compliance with the Bankruptcy Code only because a plan has been confirmed. This is especially true where, as here, the confirmed plan specifically carves out an exception to the clause releasing pre-confirmation professionals for "gross-negligence or willful misconduct."[2] *See generally In re Marin*, 256 B.R. 503 (Bankr. D. Colo. 2000) (court ordered attorney to disgorge fees where he did not comply with disclosure requirements notwithstanding that case had been dismissed). Denison and Marine engaged in self-dealing and failed to disclose the prior and continuing relationship between Denison and Israel in derogation of the disclosure requirements of Bankruptcy Rule 2014.[3] The confirmed plan specifically excluded release of

---

[2] Because the confirmed plan did not release professionals for gross negligence or willful misconduct, it does not matter that the time to revoke an order confirming a plan under Bankruptcy Rule 9024 passed.

[3] Non-compliance is discussed in further detail *infra MMS's Cross Motion for Summary Judgment.*

"willful misconduct."[4]  I have continuing subject matter jurisdiction arising under 11 U.S.C. § 330, Bankruptcy Rule 2014, and the Plan's provisions which expressly address my authority to "resolve any cases, controversies, suits or disputes with respect [to] any Plan provisions" and to adjudicate actions to "recover all Assets of the Debtor and property of the Post-Confirmation Estate" as explicitly provided in the confirmed plan.

B.   Personal Jurisdiction

Denison and Marine's personal jurisdiction argument is patently frivolous.  I manifestly have jurisdiction over the – professionals who voluntarily sough and obtained authority to act for the Debtor's estate.  Denison and Marine were ordered to show cause why their commissions should not be disgorged in August 2009.  Their first response to the disgorgement issue was a motion for continuance which did not contain any objection to the exercise of personal jurisdiction over them. They waited until September 2010 to object to personal jurisdiction.  Even if there might have been some substance to the personal jurisdiction argument (and there is not), they have waived that argument.

C.   Standing

The contention that the Plan Administrator and MMS had no standing to conduct discovery on the Order to Show Cause or pursue the Motion for Disgorgement is meritless.  MMS correctly noted that "vesting of rights under section 4.2 of the Plan is extremely broad, and incorporates the broad definition of "Recovery Rights" under section 1.54."  The Plan also gives the Plan Administrator "broad discretion" to recover assets which are owed to the Estate. *See* [ECF No. 155],

---

[4] Dension and Marine's conduct that encompasses this exception is discussed in greater detail below.  *Infra MMS's Cross Motion for Summary Judgment.*

at § 5.1(b), (i), (l), (p), (r).  The payment of professional fees to Denison and Marine was based on the false assertion that Denison and Marine held no interests adverse to the bankruptcy estate.  The Plan Administrator's recovery rights extend to recovery of fees where a professional has concealed a conflict of interest. *See id.*;  *In re Creative Desperation*, 415 B.R. 882, 897 (Bankr. S.D. Fla. 2009) (citing *In re Redding*, 251 B.R. 547 (Bankr. W.D. Mo. 2000)).

The argument that MMS had no standing to bring the disgorgement motion is flawed.  The Plan Administrator gave MMS the authority to act for her and assert certain rights.  This authorization was confirmed in a letter from the Plan Administrator dated September 27, 2010 authorizing MMS "to pursue on [her] behalf and on behalf of itself, the disgorgement of fee issues as raised by the Court and in the motions for disgorgement relative to" Denison and Marine "including but not limited to recovery of commissions paid but not earned, attorneys' fees and prejudgment interest." *See* [ECF No. 520-1].  This authorization was approved by my Order Approving Assignment of Plan Administrator's Interest to Marina Mile Shipyard, Inc. on January 4, 2011. *See* [ECF No. 569].  The Plan Administrator and MMS have standing here.  Because Denison and Marine's arguments with regard to subject matter jurisdiction, personal jurisdiction, and standing all fail, the Motion to Discharge and Strike Various Motions is denied.

### *Motions for Summary Judgment*

A.      Legal Standard

Under Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56) summary judgment is proper only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits (if any) show that there are no genuine issues regarding any material fact such that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The

moving party bears the initial burden of showing the Court that there are no genuine issues of material fact that should be decided at trial. *Jeffery v. Sarasota White Sox*, 64 F.3d 590, 593-94 (11th Cir. 1995); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606-07 (11th Cir. 1991). When assessing whether a movant has met this burden, a court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion and resolve all *reasonable* doubts in that party's favor. *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has explained:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir. 1988). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325.

After the moving party has met its burden of coming forward with evidence of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case. *Id.* at 324. If the record presents factual issues, the court must not decide them; it must instead deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).[5] The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported

---

[5] Fifth Circuit Decisions entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209-10 (11th Cir. 1981).

motion for summary judgment; the requirement is that there be no *genuine* issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). If the record as a whole could not lead a rational finder of fact to find for the nonmoving party, then there is no *genuine* issue of fact precluding summary judgment.

B.  Denison and Marine's Motion for Summary Judgment Is Denied.

Denison and Marine argue that summary judgment should be entered against MMS because the confirmed plan prevents me from reviewing pre-confirmation professional activities and ordering disgorgement of compensation obtained. The allegations contained in the summary judgment motion are essentially the same as the allegations contained in the Motion to Discharge and Strike Various Motions: (1) that MMS lacked standing to pursue the disgorgement claim; and (2) there was no legal or factual basis for MMS to demand pre-judgment interest or attorneys fees. Accordingly, I deny Denison and Marine's summary judgment motion for the same reasons set forth above in my discussion of the Motion to Discharge and Strike Various Motions.

C.  MMS's Cross Motion for Summary Judgment Is Granted.

Bankruptcy courts have a duty to review fees received by professionals and the Bankruptcy Code only allows employment of professionals who "do not hold or represent an interest adverse to the estate, and that are disinterested persons." *See* § 327(a); *Dery*, 468 F.3d at 330. "Bankruptcy Rule 2014 requires . . . the professional to be employed to disclose the professional's connection with the debtor, creditors [or] any party of interest." *In re Gulf Coast Orthopedic Ctr.*, 265 B.R. 318, 322 (Bankr. M.D. Fla. 2001). "Bankruptcy courts are not obliged to hunt around and ferret through thousands of pages in search of basic disclosures required by Rule 2014." *Quarles & Brady LLP*

*v. Maxfield (In re Jennings)*, 199 Fed. Appx. 845, 848 (11th Cir. 2006). Furthermore, courts generally agree that:

> [T]he Bankruptcy Code requires disapproval of all employment of professionals who are not disinterested and once the employment [is] authorized the Court must set aside the employment of the disqualified professional. *In re EWC, Inc.*, 138 B.R. 276 (Bankr. W.D. Okla. 1992); *In re Rusty Jones, Inc.*, 134 B.R. 321 (Bankr. N.D. Ill. 1991). Several courts [have] concluded that the Court must deny compensation for services performed during [a] conflict pursuant to Section 330(a), which permits allowance to officers of an estate. *Brown v. Luker (In re Zepecki)*, 258 B.R. 719 (B.A.P. 8th Cir. 2001).

*In re Gulf Coast Orthopedic Ctr.*, 265 B.R. at 322-23. Disgorgement is the expected remedy when a professional does not comply with the Bankruptcy Code or its Rules. *In re Creative Desperation*, 415 B.R. at 897 (citing *In re Redding*, 251 B.R. at 547).

Here, Denison and his company Marine had an undisclosed prior and continuing relationship with the buyer and engaged in self-dealing such that Denison and Marine clearly had an interest adverse to the estate. Denison and Marine were fiduciaries employed by the bankruptcy estate to sell the Dry Dock Property for the benefit of the estate. Denison had a prior relationship with the buyer (as Israel's broker), selling two other marinas owned by Israel. Denison failed to disclose that he had worked for Israel in the past when it became clear that Israel was a potential buyer; indeed, Denison actually solicited Israel's interest. Furthermore, Denison was negotiating to become part owner of one Israel's buying entities before the closing on the Dry Dock Property. Although Denison's ownership in SKID was not official until after closing on the Dry Dock Property, it was improper to have negotiated such a deal during the time in which Israel was negotiating the Dry Dock Property deal. Denison's backdoor deal with Israel gave Denison an incentive to formulate a sale that favored Israel rather than the bankruptcy estate. Denison's later self-serving contention

that he was not negotiating for an interest in SKID while the Dry Dock deal was going on is utterly belied, and rendered conclusively incredible, by the very name SKID (a jumbled acronym for Steven Israel and Kit Denison) and by the pre-closing email traffic between Denison and Israel discussing Denison's employment by and ownership interest in SKID.

The record before me is clear:

(1) Israel snagged the Dry Dock Property at an enormously favorable discount;

(2) Denison kicked back half of a $75,000.00 co-brokerage fee to Israel without court approval, saving Israel an additional $37,500.00;

(3) Denison took a $535,000.00 commission when I only approved $490,000.00;

(4) Denison obtained an ownership interest in and employment with SKID as a result of handling the Dry Dock Property sale; and

(5) Denison failed to disclose his relationship with Israel and SKID as required by 11 U.S.C. § 327 and Bankruptcy Rule 2014.

Had Denison disclosed his relationship with Israel and SKID, I would not have approved his professional employment because it would have been apparent that he had an interest adverse to the bankruptcy estate. The nondisclosures amount to a fraud on this court and on the Debtor's estate by a person who owed fiduciary duties to the estate. Denison and Marine should not have been made estate professionals pursuant to § 327, and they should not have been compensated pursuant to § 330. Denison and Marine have been given ample time to show cause why disgorgement should not be ordered. Denison's attempt to create issues of fact by filing a Certification in Opposition to MMS's Cross-Motion fails because his self-serving affidavit has no factual support in the record and creates no genuine issue of material fact. Kick-backs and "back-scratching" of the sort engaged in

by Denison and Israel are anathema.  I find as a matter of law upon the record before me that Denison used his position as broker for the Dry Dock Property to benefit himself without regard for his fiduciary duties. MMS's Cross-Motion for Summary Judgment on Disgorgement Issues is accordingly granted.

*Conclusion*

Denison and Marine failed to disclose the conflict of interest presented by their relationship with Israel and SKID as required by Fed. R. Bankr. P. 2014.  Bankruptcy courts have a continuing duty to review fees received by professionals. *Dery*, 468 F.3d at 330.  "Absent compliance with the Bankruptcy Code and Federal Rules of Bankruptcy Procedure, a professional has no right to compensation." *In re Ford*, No. 8:10-mp-00010, 2011 Bankr. LEXIS 557, at *10 (Bankr. M.D. Fla. Feb. 17, 2011).  It is **ORDERED** that:

1. Denison and Marine's combined Motion for Summary Judgment / Motion to Discharge and Strike Various Motions **[ECF No. 489]** is **DENIED** in its entirety;

2. Denison and Marine's Motion for Summary Judgement **[ECF No. 486]** is **DENIED**;

3. MMS's Cross Motion for Summary Judgment **[ECF No. 521]** is **GRANTED IN PART & DENIED IN PART**.  Denison and Marine are ordered to disgorge the full remaining $490,000.00 of paid commission, but I decline to award prejudgment interest and fees.

# # #

*The Clerk of Court is directed to provide copies of this order to all interested parties registered to receive notice.*