

**ORDERED in the Southern District of Florida on April 29, 2011.**

_____
John K. Olson, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division**
www.flsb.uscourts.gov

**In re**:

**New River Dry Dock, Inc.**,

Debtor.
_____/

Case No. 06-13274-JKO

Confirmed Chapter 11

**Order Continuing April 20, 2011 Show-Cause Hearing**

Christopher "Kit" Denison and his company, Marine Realty, Inc., ("Denison") were retained on October 3, 2006 as real estate brokers for the bankruptcy estate under 11 U.S.C. § 327. *See* [ECF Nos. 47 & 60]. Denison took a commission from the sale which exceeded the court-authorized amount of $490,000 by about $45,000. On June 8, 2010, the court entered a "Partial Agreed Order on Motion by Marina Mile Shipyard for Disgorgement of Compensation or to Compel" in which Attorney Kevin Gleason, on Denison's behalf, agreed that Denison would pay $1,155.00 by June 23, 2010, $7,500.00 by July 15, 2010, $37,500.00 by September 22, 2010, and that if the payments were not timely made, ". . . Denison remains liable for such amounts as are not

-1-

timely paid[.]" *See* [ECF No. 451].  When Denison did not comply with the "Partial Agreed Order," the court issued an order on November 1, 2010 finding that Denison was liable for the unauthorized overpayment plus interest aggregating the amount of $54,028.00. *See* [ECF No. 532].

On November 2, 2010, Attorney Kevin Gleason electronically filed a claim of exemption, *see* [ECF No. 535], which asserted that the funds held by Denison were exempt under Florida law such that he could avoid compliance with the June 8, 2010 "Partial Agreed Order" and not be compelled to disgorge the $54,028.00 specified in the court's November 1, 2010 order. *See* [ECF Nos. 451 & 532].  Attorney Robert Jennings filed a motion to strike that claim of exemption on November 3, 2010. *See* [ECF No. 537].  As required by Fed. R. Bankr. P. 9011(c)(1)(A), Jennings gave Gleason an opportunity to withdraw or otherwise amend the claim of exemption before filing a motion for sanctions against him.  When Gleason did not amend or withdraw the claim of exemption, Jennings filed a Rule 9011 motion for sanctions on November 29, 2010. *See* [ECF No. 550].

On November 30, 2010, the court conducted a hearing on Jennings' motion to strike the claim of exemption. *See* [ECF Nos. 537 & 540].  For the reasons stated on the record at the November 30th hearing, the court entered an order on December 6, 2010 granting Jennings' motion and striking the claim of exemption. *See* [ECF No. 552].

On January 4, 2011, the court conducted a hearing on Jennings' motion for Rule 9011 sanctions. *See* [ECF No. 551].  After oral argument on how to properly calculate the Rule 9011(c)(1)(A) safe harbor period, the court took the matter under advisement. On March 31, 2011, the court published an opinion discussing proper day counting, explaining that Jennings had improperly calculated the Rule 9011(c)(1)(A) safe harbor period, and Jennings' motion

for sanctions was accordingly denied. *See* [ECF Nos. 588 & 589]. The March 31st order *sua sponte* scheduled a show-cause hearing for April 20, 2011 to consider non-monetary sanctions tailored to deter behavior prohibited by Rule 9011(b). Sanctions imposed under the court's inherent power are, of course, not affected by the safe harbor provision of Rule 9011. *See Ginsberg, et al. v. Evergreen Security, Ltd., et al. (In re Evergreen)*, 570 F.3d 1257, 1273 (11th Cir. 2009).

On April 18, 2011, Gleason filed a written response to the March 31st order. *See* [ECF No. 593]. The court heard brief oral argument on April 20, 2011 and took the matter under advisement. Having considered Gleason's written response, the transcript submitted by Gleason at the April 20th hearing, and the other relevant portions of the record, the court finds that both the November 2, 2010 claim of exemption and the April 18, 2011 written response violated Rule 9011(b). A further hearing will be conducted to craft appropriate sanctions designed to deter similar behavior.

*The Written Response*

The April 18, 2011 written response to the March 31, 2011 show-cause order raises a number of issues. *See* [ECF No. 593]. First, the show-cause order mistakenly referred six times to an "agreed order" entered on December 6, 2010. *See* [ECF Nos. 552, 588, & 589]. The December 6, 2010 Order Striking Claim of Exemption resulted from the November 30, 2010 hearing on Jennings' motion to strike, and the order was not "agreed."

The fact that the December 6, 2010 order was not agreed does not vitiate the court's finding that the stricken November 2, 2010 claim of exemption violated Fed. R. Bankr. P. 9011(b). At the January 4, 2011 hearing on Jennings' motion for sanctions, the thrust of Gleason's argument concerned improper day counting, and he won on that argument. He also argued that

Fla. Stat. § 222.11 ("Exemption of wages from garnishment.") supports the claim of exemption such that it is not a frivolous pleading, but he did not offer supporting case law on that point. A search of Westlaw database "FL-CS-ALL" returns three cases in response to the query *"disgorg!" & ("222.11" or "222.12")*. None of the three cases support the argument raised in Gleason's April 18, 2011 written response (that there is no substantive difference between sequestration/disgorgement of bankruptcy estate professional fees and attachment/garnishment). Rather, in the absence of case law support, the written response states (referring to the court):

> You brush off the statutory protection of the earnings of the head of a household as "Fla. Stat. § 222.11(b) plainly did not apply", because "Fla. Stat. § 222.11(b) refers to garnishment and attachment and is utterly inapplicable to court orders sequestering and directing disbursement of funds." A garnishment is the interception of funds payable to a debtor by judicial intervention which redirects payment to the creditor of the debtor. You may call what you did a "sequestrating and directing disbursement," but the effect was the very same as a garnishment and attachment. Your semantic distinctions express no difference.

*See* [ECF No. 593]. The argument that sequestration/disgorgement is merely a semantic difference from attachment/garnishment, notwithstanding this court's continuing duty to police professionals and their fees under 11 U.S.C. §§ 327 & 330, is not supported by case law. Footnote three of Gleason's April 18th written response to the show-cause order cites to Fla. Stat. § 222.12:

> F.S. § 222.12 provides, in pertinent part, "Whenever any money ... is attached by such process, the person to whom the same is due and owing may make oath before ... a notary public that the money attached is due for the personal labor and services of such person, and she or he is the head of a family residing in said state. When such an affidavit is made, notice of same shall be forthwith given to the party, or her or his attorney, who sued out the process, and if the facts set forth in such affidavit are not denied under oath within 2 business days after the service of said notice, the process shall be returned, and all proceedings under the same shall cease.["]

*See* [ECF No. 593], at 3.  But "such process" refers to the immediately preceding Fla. Stat. § 222.11, and that process is attachment and garnishment.  Again, Gleason offers no law to support the proposition that "such process" refers to sequestration and disgorgement of improperly received professional fees under the Bankruptcy Code.  The only case that the court has been able to find which is arguably on point is *In re Malloy*, 2 B.R. 674 (Bankr. M.D. Fla. 1980) (Proctor, J.).  In *Malloy*, Judge Proctor found that Fla. Stat. § 222.11 does not apply to independent contractors:

> The debtor also argues that the unpaid renewal commissions are exempt from process by virtue of Florida's garnishment protection statute. Section 222.11 provides
>
> No writ of attachment or garnishment or other process shall issue from any of the courts of this state to attach or delay the payment of any money or other thing due to any person who is the head of a family residing in this state when the money or other thing is due for the personal labor or services of such person.
>
> He urges that the sums are due for his personal labor or services and thus do not pass to the trustee.
>
> The trustee responds that the statute does not apply to independent contractors. *Patten Package Co. v. Houser*, 102 Fla. 603, 136 So. 353 (1931). He relies on an unreported case from this district that holds that fees due an attorney for prepetition services are not within the statute. *In re Lefevre*, Case No. 68-97-Orl-BK-P (November 14, 1969). Any other conclusion, he contends, would render the accounts receivable of every professional man who earns his living by the rendering of personal services exempt.
>
> At the hearing, the debtor testified that his prepetition status was that of an independent contractor. On that basis, along with his brief description of his relationship with the insurance companies, he is not entitled to the benefits of the state statute. His unpaid renewal commissions may not be as negotiable or marketable as an attorney's accounts receivable, but, under the above discussed analysis, are transferrable. Therefore, the right to the renewal commissions become property of the estate to the extent that they represent payment for past services.

*Malloy*, 2 B.R. at 676.  *Malloy* is not "red flagged" within Westlaw, nor has the court found a more recent case which contradicts *Malloy's* holding that Fla. Stat. § 222.11 does not apply to independent contractors.  Gleason offered no law to contradict this court's holding that § 222.11 does not apply to estate professionals who are ordered to disgorge fees, and the only law which the court has found actually undercuts Gleason's argument.  So, in response to an order to show cause which directed Gleason to appear and show cause why non-monetary sanctions should not be imposed for violating Fed. R. Bankr. P. 9011(b), Gleason filed a pleading which violated Rule 9011(b).

The April 18, 2011 written response to the March 31st show-cause order also raises a number of other perceived errors in the court's judgment:

> In the Order to Show Cause [ECF 588] (hereinafter OSC) at pages 1 and 3, you "found" that " Denison had already admitted he owed those commissions to the Plan Administrator under the Debtor's confirmed Chapter 11 Plan." Wrong. Denison admitted that he was overpaid through a mathematical error not of his making. He further pledged to repay that amount. He did not consent to the entry of a judgment against him, an act undertaken *sua sponte* and *ultra vires*.

*See* [ECF No. 593], at 2.  But ECF No. 451 was a "Partial Agreed Order on Motion by Marina Mile Shipyard for Disgorgement of Compensation or to Compel" signed June 8, 2010 in which Gleason, on Denison's behalf, agreed that Denison would pay $1,155.00 by June 23, 2010, $7,500.00 by July 15, 2010, $37,500.00 by September 22, 2010, and that if the payments were not timely made, " . . . Denison remains liable for such amounts as are not timely paid[.] "  Only when Denison did not comply with the "Partial Agreed Order" did the court issue an order on November 1, 2010 compelling return of the unauthorized overpayment.  Gleason's argument that Denison " . . . did not consent to the entry of a judgment against him, an act undertaken *sua sponte* and *ultra vires* . . . " is belied by the record.  Because Gleason has repeatedly raised arguments unsupported by law or

the record and engaged the court in a disrespectful tone, the court finds that Gleason's behavior demonstrates bad faith supporting the imposition of sanctions under the court's inherent authority. *See Evergreen,* 570 F.3d at 1275.

*Conclusion*

The court finds that the Claim of Exemption electronically filed by Gleason on November 2, 2010 violated Fed. R. Bankr. P. 9011(b). The court further finds that, in response to the March 31st order which directed Gleason to appear and show cause why non-monetary sanctions should not be imposed for violating Rule 9011(b), Gleason filed a pleading which further violated Rule 9011(b). The court finds that sanctions should be imposed, but will reserve on the matter of what those sanctions should be pending further hearing. This matter is continued to a future date to be set by further order of this court.

# # #

*The Clerk of Court is directed to provide copies of this order*
*to all interested parties registered to receive notice.*