UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                          Case No. 06-13274-BKC-JKO
New River Dry Dock, Inc.,                       Chapter 11

        Debtor.
_____/

## ORDER SANCTIONING ATTORNEY KEVIN C. GLEASON

**THIS MATTER** came on for hearing before an *en banc* panel of the United

States Bankruptcy Court for the Southern District of Florida on August 18, 2011.

The panel convened to consider whether Kevin C. Gleason ("Mr. Gleason") should be

sanctioned for the unprofessional and disrespectful tone and content of his April 18,

2011 Response (ECF No. 593) and May 13, 2011 Supplemental Response (ECF No.

614) (collectively, the "Responses"). *Order Setting En Banc Show-Cause Hearing*

(ECF No. 612) and *Order Granting Ex-Parte Motion to Continue En Banc Hearing*

(ECF No. 627) (collectively, the "En Banc Show-Cause Orders").

### FACTUAL BACKGROUND

Mr. Gleason, an attorney specializing in bankruptcy, has practiced before this

Court for many years. In this case, Mr. Gleason represents a real estate sales agent

engaged to sell assets of the debtor. *See In re New River Dry Dock, Inc.,* 2011 WL

1355300 (Bankr. S.D. Fla. March 31, 2011). Mr. Gleason filed a Claim of Exemption

on behalf of his client ("Claim") asserting that a commission received from a real

estate sale was exempt from attachment or garnishment under Florida law, and

thus not subject to disgorgement under an order entered in this case.[1] *Id.* at *1. An unsecured creditor filed a motion to strike the Claim, and a motion for sanctions based upon the filing of the Claim. *Id.* Judge Olson denied the creditor's motion for sanctions because the 21-day safe harbor period of Fed. R. Bankr. P. 9011 had not run before the motion for sanctions was filed. *Id.* at *3. In the same order, on the Court's initiative pursuant to Fed. R. Bankr. P. 9011(c)(1)(B), Mr. Gleason was ordered to show cause why non-monetary sanctions should not be imposed for having filed the Claim ("New River Show-Cause Order") (ECF No. 589). *Id.* at *4. The New River Show-Cause Order was published in the Westlaw electronic database. *See* 2011 WL 1355300.

Mr. Gleason's written Responses to the New River Show-Cause Order are the subject of this disciplinary matter. The bankruptcy judges in this district seldomly sit *en banc.* The decision to convene this panel was based upon the extraordinary nature of the language contained in Mr. Gleason's initial April 18, 2011 Response. The wholly inappropriate and unprofessional content and style of the initial Response is evident from the very first sentence which states:

In your fourth published example of "Ready-Fire-Aim" against this attorney, it is obvious that you have not reviewed the record in this case which does not support the purported findings of fact.

Then it gets worse. Mr. Gleason's disrespectful and impertinent attack on the Court continues with, for example, the following:

Your conduct in this case has been without citation to any authority for the propositions that: your jurisdiction is never ending and without geographic

---

[1] Judge Olson's orders requiring sequestration and turn over of the real estate commission have been appealed by Mr. Gleason on behalf of his client.

bounds, your unconditional releases are meaningless, and pronouncements of the United States Supreme Court are mere suggestions.

In the Order to Show Cause [ECF 588] (hereinafter OSC) at pages 1 and 3, you "found" that "Denison had already admitted he owed those commissions to the Plan Administrator under the Debtor's confirmed Chapter 11 Plan." Wrong.

\* \* \*

In the OSC, at page 2, you found that "On December 6, 2010, Gleason and MMS entered into an agreed order to strike the Claim." Where you draw this conclusion can only be from the ether.

\* \* \*

Wrong. The statute, which I followed and you ignored, requires service upon the party seeking to enforce a judgment, and permits that party 2 days to respond.

\* \* \*

On page 9 of the OSC, you again blunder regarding the nature of the order you entered after a full hearing, and without my continuously-attributed agreement.

\* \* \*

It is sad when a man of your intellectual ability cannot get it right when your own record does not support your half-baked findings.

Response at 1-4.

One would think that after filing this incredible document, Mr. Gleason would have realized his mistake and would have immediately filed a paper seeking to strike the Response with a sincere apology for his written outburst. That did not happen. Instead, Mr. Gleason filed his Supplemental Response containing an extraordinary offer to participate in an *ex parte* communication with Judge Olson. As memorialized in the Supplemental Response, on April 29, 2011, Mr. Gleason delivered a bottle of wine to Judge Olson's chambers with a note reading: "Dear Judge Olson, A Donnybrook ends when someone buys the first drink. May we

3

resolve our issues privately?" Supplemental Response at 7. The wine and note were returned to Mr. Gleason's office unopened.

The Court has considered the record, including the Second Supplemental Response filed by Mr. Gleason ("Second Response") (ECF No. 662), considered the testimony of Mr. Gleason and the arguments of his counsel at the August 18th hearing, and reviewed the applicable law. For the reasons that follow, the panel finds that Mr. Gleason's Responses and actions constitute professional misconduct warranting the imposition of sanctions.

## CONCLUSIONS OF LAW

### I.   Authority to Regulate the Conduct of Attorneys Appearing Before the Court

"Federal courts, including bankruptcy courts, have the inherent power to impose sanctions on parties and lawyers." *In re Walker*, 532 F.3d 1304, 1309 (11th Cir. 2008); *see also In re Mroz*, 65 F.3d 1567, 1574 (11th Cir. 1995); *In re Evergreen Security, Ltd.*, 570 F.3d 1257, 1263 (11th Cir. 2009). "This power is derived from the court's needs to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." 570 F.3d at 1263 (*quoting In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006)) (alteration in original).

"It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (*quoting United States v. Hudson,* 7 Cranch 32, 34, 3 L.Ed. 259

4

(1812)) (alteration in original). "Accordingly, '[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" *Thomas v. Tenneco Packaging Co. Inc.*, 293 F.3d 1306, 1320 (11th Cir. 2002) (*quoting Chambers*, 501 U.S. at 43, 111 S.Ct. at 2132) (alteration in original).

> This means, among other things, "that a federal court has the power to control admission to its bar and to discipline attorneys." *Chambers*, 501 U.S. at 43, 111 S.Ct. at 2132 ; *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980) (noting that "[t]he power of a court over members of its bar is at least as great as its authority over litigants"). That is, "[e]ven absent explicit legislative enactment, deeply rooted in the common law tradition is the power of any court ... to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1447 (11th Cir. 1985).

*Id.* (alterations in original). "Bankruptcy Courts also have authority under § 105(a) 'to regulate those who appear before it, and what they say and do during that representation.'" *In re Brooks-Hamilton*, 400 B.R. 238, 248 (9th Cir. B.A.P. 2009) (*quoting* 2 Collier on Bankruptcy ¶ 105.04[7]). "Courts have used those provisions of section 105 . . . to regulate the practice of lawyers." *Id.*

Thus, the Court has inherent and statutory authority to control admission to its bar and to discipline attorneys practicing before the Court. This authority is independent of the Florida Bar's authority to sanction its members for misconduct and is independent of any Florida Bar disciplinary proceeding. The Court's Local Rules, promulgated pursuant to Fed. R. Bankr. P. 9029, set forth, *inter alia*, the qualifications required for an attorney to practice before the Court, and the Court's

procedures concerning attorney discipline. Local Rules 2090-1, 2090-2. Sanctions may be imposed for failure to comply with the Local Rules. Local Rule 1001-1(D).

## II.   Mr. Gleason Has Been Afforded Due Process

It is well-established that a court must "exercise caution in invoking its inherent power, and it must comply with the mandates of due process[.]" *Chambers*, 501 U.S. at 50, 111 S.Ct. at 2136. "Due process requires that the attorney (or party) be given fair notice that his conduct may warrant sanctions and the reasons why." *Mroz*, 65 F.3d at 1575 (*citing Donaldson v. Clark*, 819 F.2d 1551, 1559-60 (11th Cir.1987)). "In addition, the accused must be given an opportunity to respond, orally or in writing to the invocation of such sanctions and to justify his actions." *Id.* at 1575-1576 (*citing Donaldson*, 819 F.2d at 1559-60). As discussed herein, the due process requirements of fair notice and an opportunity to be heard have been satisfied.

The *en banc* show-cause hearing was set pursuant to Local Rule 2090-2(B)(1) which provides:

Upon order to show cause entered by at least one judge, any attorney appearing before the court may, after 30 days' notice and hearing and for good cause shown, be suspended from practice before the court, reprimanded or otherwise disciplined, by a judge whose order to show cause initiated the disciplinary proceedings.

*Order Setting En Banc Show-Cause Hearing* at 3. By citing this provision, the En Banc Show-Cause Orders provided fair notice to Mr. Gleason that the *en banc* panel would consider whether Mr. Gleason should be suspended from practice before the Court, reprimanded or otherwise disciplined for the unprofessional and

6

disrespectful tone and content of his Responses. The *Order Granting Ex Parte*

*Motion to Continue En Banc Hearing* further stated that the panel would determine

whether Mr. Gleason failed to conduct himself properly as an officer of the Court or

to abide by the standards of professional conduct that are incumbent upon all

attorneys who practice before the Court. This Order also advised Mr. Gleason that:

> In making this determination, the panel will consider "case law, applicable court rules, and the 'lore of the profession' as embodied in codes of professional conduct." *In re Snyder*, 472 U.S. 643, 645, 105 S.Ct. 2874 (1985).

\* \* \*

> Should the panel find Mr. Gleason has engaged in professional misconduct, the panel will consider factors, such as those set forth in the Florida Bar Standards for Lawyer Sanctions, to fashion appropriate sanctions. . . . *See* Fla. Bar Standards for Lawyer Sanctions, Std. 3.0 *et. seq.* As a point of further clarification, the underlying Rule 9011 issues will not be heard by the panel. [2]

*Order Granting Ex-Parte Motion to Continue En Banc Hearing* at 2-3. In addition

to the En Banc Show-Cause Orders, the Local Rules provide notice of the standard

of conduct by expressly requiring attorneys practicing before this Court to:

> read and remain familiar with these rules, administrative orders, the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, the Federal Rules of Evidence, The Florida Bar's Rules of Professional Conduct, and the Bankruptcy Code;

Local Rule 2090-1(A)(2). Local Rule 2090-2(D) concerning attorney discipline

further provides that:

> The professional conduct of attorneys appearing before this court shall be governed by the Model Rules of Professional Conduct of the American Bar

---

[2] At the beginning of the hearing, Chief Judge Hyman reiterated that the panel was not convened to determine whether Judge Olson's underlying orders were correct. Judge Hyman indicated that issue was for Judge Olson to determine in the context of motions for rehearing or for an appellate court upon the filing of an appropriate appeal.

Association as modified and adopted by the Supreme Court of Florida to govern the professional behavior of the members of The Florida Bar.

Local Rule 2090-2(D).

In addition to the notice provided to Mr. Gleason by the En Banc Show-Cause Orders and the Local Rules, "[t]he United States Supreme Court has stated that a federal court can charge attorneys with knowledge of, and hold them accountable to, state ethics rules in the state where the court sits." *Thomas v. Tenneco Packaging Co. Inc.*, 293 F.3d at 1323 n.25 (*citing In re Snyder*, 472 U.S. 634, 645 n. 6, 105 S.Ct. 2874, 2881 n. 6, 86 L.Ed.2d 504 (1985) ("The uniform first step for admission to any federal court is admission to a state court. The federal court is entitled to rely on the attorney's knowledge of the state code of professional conduct applicable in that state court. . . .")). In his opening remarks at the August 18th hearing, counsel for Mr. Gleason acknowledged this by stating: "As an officer of the Court attorneys have certain duties as a professional in the legal system. For attorneys practicing in Florida those rules are enumerated in the Florida Rules of Professional Conduct." En-Banc H'rg Tr. 19:8-11 (ECF No. 669).

Two days before the *en banc* hearing, Mr. Gleason filed a Second Response. In the Second Response and at the hearing, Mr. Gleason argued that the En Banc Show-Cause Orders did not adequately indicate, and Mr. Gleason did not know, which Florida Bar rule or rules of professional conduct he is alleged to have violated. Mr. Gleason and his counsel were given, and took, the opportunity to respond to the En Banc Show-Cause Orders orally and in writing. From his written responses and his presentation before the Court, it is apparent that Mr. Gleason

8

was and is well aware of his duties to this Court. The En Banc Show-Cause Orders provided ample notice to Mr. Gleason of the actions that the Court considered beyond the limits of appropriate professional behavior. The panel concludes that the mandate of due process - fair notice and an opportunity to be heard - was met.

## III.    Mr. Gleason's Responses And Conduct Constitute Professional Misconduct

"Lawyers are officers of the court and they are responsible to the judiciary for the propriety of their professional activities." Preamble to Chapter 4: Florida Bar Rules of Professional Conduct ("Florida Bar Rules"). The Supreme Court discussed the duty of an officer of the court in *In re Snyder*, 472 U.S. 634, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985):

> Courts have long recognized an inherent authority to suspend or disbar lawyers. This inherent power derives from the lawyer's role as an officer of the court which granted admission.
>
> * * *
>
> The phrase "conduct unbecoming a member of the bar" must be read in light of the "complex code of behavior" to which attorneys are subject. Essentially, this reflects the burdens inherent in the attorney's dual obligations to clients and to the system of justice. Justice Cardozo once observed:
>
>> "Membership in the bar is a privilege burdened with conditions. [An attorney is] received into that ancient fellowship for something more than private gain. He [becomes] an officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice." *People ex rel. Karlin v. Culkin*, 248 N.Y. 465, 470-471, 162 N.E. 487, 489 (1928).

*Id.* at 643-44, 105 S.Ct at 2880-81 (internal citations omitted). "As an officer of the court, every lawyer must avoid compromising the integrity of his or her own reputation and that of the legal process itself." *Smith v. Johnston,* 711 N.E.2d 1259,

1264 (Ind. 1999). "Thus lawyers' duties are found not only in the specific rules of conduct and rules of procedure, but also in courtesy, common sense and the constraints of our judicial system." *Id.* at 1263-64. The Responses are not just discourteous to this Court; their language and tone violate an attorney's duties as an officer of this Court, as set forth in the Florida Bar Rules, to maintain the integrity of the Court by demonstrating respect for the legal system and for judges.

It is important to note that this Court is not the Florida Bar and does not act for the purpose of applying the Florida Bar Rules. The panel is informed, but not controlled, by the Florida Bar Rules which provide a useful framework against which to measure the conduct under review.[3] The tone and content of Mr. Gleason's Responses and his conduct violate several Florida Bar Rules including a Lawyer's Responsibilities as set forth in the Preamble to Chapter 4, Rule 4-3.5(a), Rule 4-8.2 (a) and Rule 4-8.4. The Preamble to Chapter 4 states in pertinent part:

A lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system, and a public citizen having special responsibility for the quality of justice.

As a public citizen, a lawyer should seek improvement of the law, access to the legal system, the administration of justice, and the quality of service rendered by the legal profession. . . . In addition, a lawyer should further the

---

[3] Indeed, the Preamble to Chapter 4: Rules of Professional Conduct expressly recognizes that a lawyer's conduct is not governed solely by the Florida Bar Rules:

> The rules presuppose a larger legal context shaping the lawyer's role. That context includes court rules and statutes relating to matters of licensure, laws defining specific obligations of lawyers, and substantive and procedural law in general. Compliance with the rules, as with all law in an open society, depends primarily upon understanding and voluntary compliance, secondarily upon reinforcement by peer and public opinion, and finally, when necessary, upon enforcement through disciplinary proceedings. The rules do not, however, exhaust the moral and ethical considerations that should inform a lawyer, for no worthwhile human activity can be completely defined by legal rules. The rules simply provide a framework for the ethical practice of law. The comments are sometimes used to alert lawyers to their responsibilities under other law.

public's understanding of and confidence in the rule of law and the justice system, because legal institutions in a constitutional democracy depend on popular participation and support to maintain their authority.

Rule 4-8.2 "Judicial and Legal Officials" and commentary state in pertinent part:

(a) Impugning Qualifications and Integrity of Judges or Other Officers. A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, mediator, arbitrator, adjudicatory officer, public legal officer, juror or member of the venire, or candidate for election or appointment to judicial or legal office.

Comments: To maintain the fair and independent administration of justice, lawyers are encouraged to continue traditional efforts to defend judges and courts unjustly criticized.

Rule 4-8.4 "Misconduct" states in pertinent part:

A lawyer shall not:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

* * *

(d) engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, . . .

Rule 4-3.5 "Impartiality and Decorum of the Tribunal" states in petinent part:

(a) Influencing Decision Maker. A lawyer shall not seek to influence a judge, juror, prospective juror, or other decision maker except as permitted by law or the rules of court.

As evident from the excerpts quoted earlier, the Responses are shockingly sarcastic and unprofessional. As previously cited, the first sentence of the initial Response states: "In your fourth published example of 'Ready-Fire-Aim' against this attorney, it is obvious that you have not reviewed the record in this case which does

11

not support the purported findings of fact." This statement alone impugns the qualifications and integrity of the Court in violation of Rule 4-8.2, constitutes misconduct pursuant to Rule 4-8.4(d), and undermines the public's understanding and confidence in the legal system in contravention of a lawyer's duty of an officer of the Court, and a lawyer's responsibilities as set forth in the Preamble to Chapter 4 of the Florida Bar Rules. The remainder of the Response, which will not be quoted again here, contains numerous disrespectful and impertinent attacks on the Court. These attacks unquestionably were in violation of Mr. Gleason's duties as a member of this Court's bar, responsibilities as an officer of the Court, and duties under the Florida Bar Rules.

Mr. Gleason offers no material justification for his diatribe. Indeed, there is no appropriate justification. If an attorney believes that a ruling is incorrect, he may seek reconsideration or file an appeal. If an attorney believes that a judge is unfairly prejudiced, he may seek the judge's recusal. If an attorney has concerns about a bankruptcy judge's behavior, he may file a judicial misconduct complaint with the Eleventh Circuit. There are many avenues for redress. However, a pleading containing a hostile, undignified and insulting tirade against a particular judge or the court in general is obviously not the way to redress an unfavorable ruling or a judge's alleged unfairness. A first year law student would know that. There is a distinction between zealous advocacy and judicial denigration. *In the Matter of Maloney*, 949 S.W.2d 385, 388 (Tex. App. 1997). The Responses crossed that line by a wide margin.

Having engaged in professional misconduct by filing the initial Response, Mr. Gleason compounded his error on April 29, 2011, by delivering a bottle of wine to Judge Olson's chambers with a note suggesting that Mr. Gleason and Judge Olson resolve their issues privately. Not only was this an *ex parte* communication prohibited by Fed. R. Bankr. P. 9003,[4] it violated Florida Bar Rule 4-3.5 which prohibits a lawyer's attempt to influence a judge. At the hearing, Mr. Gleason suggested that this *ex parte* communication was somehow less troubling because there was no adversary on the other side. But Mr. Gleason's admitted *ex parte* communication plainly involves the type of impropriety, or the appearance of impropriety, that the Code of Judicial Conduct directs judges to avoid. Whether or not one has an adversary in litigation, sending a judge a bottle of wine and a note suggesting an in-person meeting is so far beyond appropriate attorney behavior that any member of the bar, no matter how green, should reject such a course of conduct without a second thought. Missing this point entirely, Mr. Gleason's Supplemental Response, commenting upon the return of the wine and the note, stated:

The attempted offering of the olive branch was rejected, and probably misinterpreted. It was not offered in surrender, but rather in truce, that we might desist in this digression from the use of our talents toward the ends for which he [*sic*] have been trained. The wine was to be consumed by us together, following which an armistice might be declared, that we both go in peace.

It is obviously not possible for this attorney to convince this Court that the record does not support its findings of fact, and that the law does not support

[4] F. R. Bankr. P. 9003(a) provides:

Except as otherwise permitted by applicable law, any examiner, any party in interest, and any attorney, accountant, or employee of a party in interest shall refrain from ex parte meetings and communications with the court concerning matters affecting a particular case or proceeding.

its conclusions of law. It will be for another court, on another day, to dispassionately consider the record and determine who owes an apology to whom.

Supplemental Response at 7-8.

It is Mr. Gleason who owes a sincere apology, not just to Judge Olson but to this Court as an institution, for his derogatory remarks that injure and undermine the judiciary, the legal system, and the public's confidence in these institutions. The panel finds that Mr. Gleason's Responses and conduct violated his duty as an officer of the Court and his duties as a member of this Court's bar pursuant to Local Rules 2090-1 (A)(1) "Qualification to Practice" and 2090-2(D) "Professional Conduct"; his duties pursuant to the Florida Bar "Preamble" to Chapter 4: "A Lawyer's Responsibilities", Florida Bar Rule 4-8.2 (a) 'Impugning Qualifications of Judges and Other Officers", Rule 4-8.4 (a)&(d) "Misconduct", Rule 4-3.5 "Impartiality and Decorum of the Tribunal"; and Fed. Bankr. R. P. 9003 "Prohibition of Ex Parte Contacts". Based upon these violations, the panel finds Mr. Gleason engaged in sanctionable professional misconduct.

## IV. Considerations for Imposition of Sanctions

The En Banc Show-Cause Orders state that upon a finding of professional misconduct, the panel would consider factors, such as those set forth in the Florida Bar Standards for Lawyer Sanctions, to fashion appropriate sanctions. *See* Fla. Bar Standards for Lawyer Sanctions, Std. 3.0 *et. seq.* Accordingly, the panel has considered: the duty violated by Mr. Gleason; Mr. Gleason's mental state; the

14

potential or actual injury caused by Mr. Gleason's misconduct; and the existence of

aggravating or mitigating factors.

## A. The Duty Violated and the Injury Caused by Mr. Gleason's Misconduct

The Second Response maintains that Mr. Gleason did not violate a duty to the

Court because he did not engage in conduct intended to disrupt a tribunal as

prohibited by Rule 4-3.5(c). The Second Response states:

Attorney Gleason recognizes the unprofessional and disrespectful tone of the
Responses for which he is prepared to apologize to the Court. *Regardless of
how disrespectful the Responses may be perceived, the question is whether they
were intended to disrupt the matters pending in the Debtor's case.*

* * *

*Given that the underlying issue of Denison's claim was already the subject of a
pending appeal, there was no actual injury caused by Attorney Gleason's
Responses.* Moreover, the Show Cause Order and Responses are completely
divorced from the bankruptcy case such that the Responses and resolution of
the Show Cause Order do not affect the administration of justice in the
Debtor's case nor do they affect Denison's rights and remedies.

Second Resp. ¶¶ 12, 15 (emphasis added).

The implication - that the Responses' disrespectful tone and content are

permissible so along as the Responses were not intended to disrupt pending matters

in the case - misses the mark. The issue is not whether the Responses were

intended to disrupt pending matters in the debtor's case regardless of how

disrespectful they may be perceived. The correct issue is whether the disrespectful

tone and content of the Responses violated Mr. Gleason's duties as an officer of the

Court and as a member of this Court's bar. The answer is "yes".

As an officer of the court, a member of the bar enjoys singular powers that
others do not possess; by virtue of admission, members of the bar share a
kind of monopoly granted only to lawyers. Admission creates a license not

only to advise and counsel clients but to appear in court and try cases; as an officer of the court, a lawyer can cause persons to drop their private affairs and be called as witnesses in court, and for depositions and other pretrial processes that, while subject to the ultimate control of the court, may be conducted outside courtrooms. The license granted by the court requires members of the bar to conduct themselves in a manner compatible with the role of courts in the administration of justice.

*Snyder,* 472 U.S. at 644-45, 105 S.Ct, at 2881. Mr. Gleason's offensive Responses violated his duty as a member of this Court's bar to conduct himself in a manner compatible with the role of this Court in the administration of justice including his duty to maintain the dignity of the Court by addressing the Court in a professional manner without regard to how he may perceive the Court. A lawyer who disrespects and denigrates the Court, as has Mr. Gleason, undermines the authority of the Court and the "public's understanding of and confidence in the rule of law and the justice system, because legal institutions in a constitutional democracy depend on popular participation and support to maintain their authority." Florida Bar Preamble to Chapter 4.

Moreover, the Second Response's "no harm/no foul" argument completely ignores the institutional damage to the judiciary. This was not a two-party dispute between Judge Olson and Mr. Gleason. The damage caused by Mr. Gleason's misconduct was to the reputation of the Court, the judicial system, the legal process and the legal profession.

## B. Mr. Gleason's Mental State and the Issue of Mitigating or Aggravating Factors

When imposing sanctions, courts consider an attorney's mental state, *i.e.,* whether the attorney acted intentionally, knowingly, or negligently. Regarding Mr.

16

Gleason's mental state, the Second Response admits "[t]he Responses, *while intentional*, do not reflect a dishonest or selfish motive." Second Response at ¶14 (emphasis added). In an unpersuasive attempt to justify the Responses, the Second Response further states:

> During the pendency of the appeal, which was filed on November 4, 2010, the Court issued the [New River Show-Cause Order] and later submitted the order for publication with Westlaw. This unfortunate turn of events escalated what was initially perceived as a mere legal conflict into something more personal in nature.

Second Response ¶14. Mr. Gleason contends that the fact of publication of the New River Show-Cause Order was damaging to his reputation and practice. At the hearing, counsel stated that he did not know why the order was published since it had no precedential value except as to Mr. Gleason. Counsel's statement implies that the order was published as a personal attack against Mr. Gleason. However, the New River Show-Cause Order addressed a legal issue warranting publication. But even had the order not contained a legal issue warranting publication, its publication does not justify Mr. Gleason's behavior.

At the August 18th hearing, Mr. Gleason testified that his reputation and practice were damaged by Judge Olson's show-cause orders. Perhaps this is true. Perhaps, and just as likely, Mr. Gleason caused the damage himself through the type of conduct that gave rise to the show-cause orders, and by filing the Responses here, which were widely circulated in the press and online.

The Court makes no finding regarding the cause of any damage to Mr. Gleason's reputation and practice. It does not matter because Mr. Gleason's effort to

defend the Responses, or mitigate the wrong, through his "protect my reputation" argument misses the point. However offended Mr. Gleason felt by the tone and content of Judge Olson's orders, no order entered by a court, whether right or wrong under the facts or law, is an invitation to "fight back" in the wholly irresponsible, disrespectful and unprofessional manner chosen by Mr. Gleason.

The Second Response acknowledges that the proper method to seek redress is to file an appeal, but nevertheless maintains that the Responses are the product of frustration. Frustration is not a mitigating factor in this case. Accordingly, Mr. Gleason's testimony and exhibits concerning his frustration arising from the Court's prior show-cause orders are not relevant. Frustration might arguably be considered a mitigating factor in the context of an inappropriate, "heat-of-the-moment" courtroom outburst. While neither disrespectful courtroom outbursts nor disrespectful written pleadings should be tolerated, the Responses are far worse than a courtroom outburst because Mr. Gleason carefully planned, wrote and filed both written Responses. In this electronic age, the content of the Responses was spread more quickly than any in-court outburst.

The Florida Bar Standards for Imposing Lawyer Sanctions lists remorse as a mitigating factor, and refusal to acknowledge wrongful nature of conduct as an aggravating factor.[5] Mr. Gleason offered an apology to Judge Olson at the *en banc*

---

[5] The Fla. Bar Standards for Imposing Sanctions include the following mitigating factors that may justify a reduction in the degree of discipline to be imposed:(a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical or mental disability or impairment; (i) unreasonable delay in disciplinary proceeding provided that the respondent did not substantially contribute to the delay

hearing. However, in the panel's view, rather than expressing sincere and genuine remorse, Mr. Gleason's apology was an attempt to justify his conduct by arguing that the Responses were an understandable reaction to Judge Olson's orders. On the whole Mr. Gleason's apology can be summed up as "I was wrong in my approach but...". There is no "but" based upon any relevant evidence presented in this case. Mr. Gleason's apology was a refusal to acknowledge the wrongful nature of his conduct. Perhaps more importantly, while Mr. Gleason apologized for taking the panel's time, his apology failed to recognize that his Responses were harmful to the Court as an institution. Mr. Gleason owes an apology to this Court as a whole in that regard, and none was tendered.

Mr. Gleason could have mitigated his unprofessional behavior with a timely good faith effort to rectify the consequences of his misconduct such as a quick withdrawal of the offending Response and a sincere apology to Judge Olson. That did not happen. Instead, Mr. Gleason inappropriately sent a bottle of wine to Judge Olson's chambers with a note that the wine was offered not in surrender but in truce, and raised the possibility that Judge Olson may someday owe Mr. Gleason an apology.

---

and provided further that the respondent has demonstrated specific prejudice resulting from that delay; (j) interim rehabilitation; (k) imposition of other penalties or sanctions; (l) remorse; (m)remoteness of prior offenses; (n) prompt compliance with a fee arbitration award. The Fla. Bar Standards for Imposing Sanctions include the following aggravating factors that may justify an increase in the degree of discipline to be imposed: a) prior disciplinary offenses; provided that after 7 or more years in which no disciplinary sanction has been imposed, a finding of minor misconduct shall not be considered as an aggravating factor; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; (j) indifference to making restitution; (k) obstruction of fee arbitration awards by refusing or intentionally failing to comply with a final award.

19

Finally, Mr. Gleason argues that he has no prior disciplinary record and that he had no selfish or dishonest motive in filing the Responses. These are among the mitigating factors listed in the Florida Bar Standards for Imposing Sanctions. However, an aggravating factor, substantial experience in the practice of law, is also present here. Mr. Gleason has been practicing before this Court for many years. He should have known better.

## V. *Bad Faith*

In the Eleventh Circuit, the imposition of sanctions pursuant to the Court's inherent powers requires a finding of bad faith or conduct tantamount to bad faith. *In re Mroz,* 65 F.3d at 1575. "Before imposing sanctions under its inherent sanctioning authority, a court must make an explicit finding of bad faith or willful misconduct." *In re Dyer,* 322 F.3d 1178, 1196 (9th Cir. 2003). "With regard to the inherent sanction authority, bad faith or willful misconduct consists of something more egregious than mere negligence or recklessness." *Id. (citing Fink v. Gomez,* 239 F.3d 989, 993-94 (9th Cir. 2001)). Bad faith includes "the instance of an attorney slandering or maligning the dignity and reputation of the court." *Bettis v. Toys R Us,* 2009 WL 5206192, *7 (S.D. Fla. 2009); *see also Evergreen Security,* 570 F.3d at 1275-77 (as to respondent who was disrespectful to the court by refusing to answer questions, treating the court as an adversary, and continually making inflammatory statements, the "bankruptcy court did not err in finding that [respondent's] overzealous litigation tactics, use of factual inaccuracies and disrespectful behavior demonstrate bad faith"); *In re 60 East 80th Street Equities,*

20

*Inc.,* 218 F.3d 109, 116-17 (2d Cir. 2000)(unsubstantiated allegations impugning the integrity of the bankruptcy court and the trustee and comments such as accusing the bankruptcy judge of fundamental ignorance and calling the trustee an idiot cross the line from passionate advocacy and disagreements with a court's decision into sanctionable conduct evincing bad faith).[6] As discussed above, the panel found that the Responses - which Mr. Gleason knowingly and intentionally planned, wrote and filed - violated Mr. Gleason's duties as a member of this Court's bar and were damaging to the Court as an institution. Therefore, the panel finds that Mr. Gleason acted in bad faith in filing the offensive Responses.

## VI. *Appropriate Sanctions*

The Eleventh Circuit has stated that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Sunshine Jr. Stores, Inc.,* 456 F.3d at 1305 (*quoting Chambers,* 501 U.S. at 44, 111 S.Ct. at 2132) (alteration in original). "A primary aspect of that discretion is the ability to fashion an appropriate sanction. . . . " *Id.* The Fifth Circuit, noting that "[t]he ultimate touchstone of inherent powers is necessity," stated that:

Such powers may be exercised only if essential to preserve the authority of the court and the sanction chosen must employ " 'the least possible power adequate to the end proposed.' " If there is a reasonable probability that a lesser sanction will have the desired effect, the court must try the less restrictive measure first.

*Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.,* 86 F.3d 464, 467-68 (5th Cir. 1996) (citations omitted).

---

[6] The district court in *United States of America v. Cleveland,* 1997 WL 539664 (E.D.La. 1997) predicated a finding of bad faith on the single point that an experienced attorney who physically threatened his adversary should have known better.

21

Attorney suspension or "[d]isbarment proceedings are not for the purpose of punishment but to maintain the integrity of the courts and the profession." *In re Lehtinen*, 564 F.3d 1052, 1059 (9th Cir. 2009) (*quoting Patterson v. Standing Comm. of Discipline to Bar of the U.S. Dist. Court of Or. (In re Patterson)*, 176 F.2d 966, 968 n. 1 (9th Cir.1949)).

> The power of a court to suspend an attorney from practice before that court is too well established to conceivably be doubted. The considerations involved when this action is taken were well summarized by Chief Justice Marshall one and one-half centuries ago:
>
>> On one hand, the profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise. The right to exercise it ought not to be lightly or capriciously taken from him. On the other, it is extremely desirable that the respectability of the bar should be maintained, and that its harmony with the bench should be preserved. For these objects, some controlling power, some discretion, ought to reside in the court. This discretion ought to be exercised with great moderation and judgment; but it must be exercised.... *Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 529–530, 6 L.Ed. 152 (1824).

*Castillo v. St. Paul Fire & Marine Ins. Co*, 828 F. Supp. 594, 598 (C.D. Ill. 1992). In addition, pursuant to the Florida Bar Standards for Imposing Sanctions, § 7.2 provides that: "Suspension is appropriate when the lawyer knowingly violates a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system."

Based upon the foregoing, the panel finds Mr. Gleason's professional misconduct warrants suspension for a period of 60 days from practice before the United States Bankruptcy Court for the Southern District of Florida as the minimal sanction necessary to preserve the authority and integrity of the Court. In addition,

the panel will refer this matter to The Florida Bar for any additional sanctions they may find appropriate.[7] As Mr. Gleason's counsel stated in his opening remarks, words have consequences. The words contained in Mr. Gleason's Responses were damaging to the integrity of the Court, the legal system and the legal profession.

## ORDER

The panel having considered Mr. Gleason's Responses and conduct, the duties and responsibilities he violated, the injury to the Court, the mitigating and aggravating factors, **ORDERS AND ADJUDGES** that:

1. Mr. Gleason is suspended from practice before the United States Bankruptcy Court for the Southern District of Florida for a period of 60 days commencing November 1, 2011.

2. Mr. Gleason will be referred to the Florida Bar for the imposition of any additional sanctions that the Florida Bar may find appropriate.

ENTERED THIS 20th DAY OF SEPTEMBER, 2011.

Paul G. Hyman
Chief United States Bankruptcy Judge
Southern District of Florida

A. Jay Cristol
United States Bankruptcy Judge
Southern District of Florida

---

[7] The panel recognizes Mr. Gleason's offer to take seven pro bono cases which he may do voluntarily. Pro bono service is not a sanction and this Court will not treat it as such.

23

Robert A. Mark
United States Bankruptcy Judge
Southern District of Florida

Raymond B. Ray
United States Bankruptcy Judge
Southern District of Florida

John K. Olson
United States Bankruptcy Judge
Southern District of Florida

Laurel M. Isicoff
United States Bankruptcy Judge
Southern District of Florida

Erik P. Kimball
United States Bankruptcy Judge
Southern District of Florida

Copies provided to:

Adria E. Quintela
Chief Branch Discipline Counsel
The Florida Bar
Lake Shore Plaza II
1300 Concord Terrace Suite 130
Sunrise, FL 33323

Francis G. Conrad, Esq.
Jager Smith P.C.
One Financial Center
Boston, Massachusetts 02111

Kevin C. Gleason, Esq.
4121 N. 31st Ave.
Hollywood, FL 33021-2011