Tagged for publication



**ORDERED in the Southern District of Florida on August 5, 2013.**

John K. Olson, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov**

**In re**:

**New River Dry Dock, Inc.**,

Debtor.
_____/

Case No. 06-13274-JKO

Confirmed Chapter 11

### Order Denying Motion to Vacate

This confirmed Chapter 11 case is before the Court on Christopher Denison's Emergency Motion (the "Motion for Reconsideration") [ECF 717, filed August 1, 2013] to Vacate Writ of Bodily Attachment and Order Adjudging Christopher "Kit" Denison in Contempt. The Motion for Reconsideration is addressed to this Court's Order Adjudging Christopher "Kit" Denison in Civil Contempt and Directing Federal Law Enforcement Agencies to Apprehend and Hold Christopher "Kit" Denison (the "Contempt Order") [ECF 714, signed July 30, 2013 and entered July 31, 2013] and the Writ of Bodily Attachment [ECF 715, issued July 31, 2013].

The Contempt Order arose out of the Motion (the "Motion to Compel") by Marina Mile Shipyard, Inc. ("Shipyard") to Compel Compliance by Civil Contempt Sanctions with Orders for Payment Directed to Christopher Denison and Marine Realty, Inc. and/or Entering Judgment Thereon [ECF 706, filed May 23, 2013]. The Motion to Compel sought to compel Denison and his company Marine Realty, Inc., to make payments previously ordered by this Court. Under the Partially Agreed Order on Motion for Disgorgement of Fees and Imposition of Sanctions (the "Agreed Order") [ECF 451, entered June 8, 2010] Denison and Marine Realty were ordered to pay to Shipyard's predecessor in interest a total of $45,000 by September 22, 2010, with the first payment of $7,500 due by July 15, 2010, later extended at the request of Denison and Marine Realty to September 22, 2010. Denison and Marine Realty had agreed to the amount and timing of these payments. Nonetheless, the only payments made on account of these agreed amounts was $25,981.41, from sequestered funds pursuant to Order [ECF 532, entered November 1, 2010].

By Order (the "Disgorgement Order") [ECF 595, entered April 19, 2010] Denison and Marine Realty were ordered to disgorge (as a result of non-disclosure and self-dealing amounting to fraud on the Court) real estate commissions previously paid to them from the Debtor's estate in the amount of $490,000. The Disgorgement Order was appealed and subsequently affirmed by both the District Court (*Denison v. Marina Mile Shipyard, Inc.,* Case No. 11-61398-Civ-MARRA/JOHNSON) [ECF 698, filed in this Court January 18, 2012] and the Court of Appeals (*Denison v. Marina Mile Shipyard, Inc.,* Case No. 12-10601 (11th Cir. Nov. 16, 2012)), *rehearing denied* (11th Cir. Jan. 16, 2013), *cert. denied* ___ U.S. ___, June 17, 2013.

Other than the involuntary payment from sequestered funds made in 2010, Denison and Marine Realty have made no payments on account of the Agreed Order or the Disgorgement Order.

The Motion to Compel was originally set for hearing on June 18, 2013. At the request of Denison's and Marine Realty's lawyer, Kevin C. Gleason, the hearing was continued and was

rescheduled for and held July 23, 2013, with notice of the new hearing date served June 5, 2013. Present at the July 23rd hearing were Mr. Gleason and Shipyard's counsel, Robert L. Jennings. Mr. Gleason stated on the record that he was present only for the purpose of having Denison confirm on the record that Denison consented to Mr. Gleason's withdrawal as his counsel. Denison did not appear. Mr. Jennings indicated on the record that he would not object to a motion seeking Mr. Gleason's withdrawal as Denison's counsel, but that Marine Realty, as a corporation, could not appear except through counsel. In any event, no motion to withdraw as counsel for either Denison or Marine Realty has been filed by Mr. Gleason. Instead, Mr. Gleason has filed the Motion for Reconsideration.

When directly asked on July 23rd if he or his client objected to the relief requested in the Motion to Compel, Mr. Gleason stated that he was "not involved" in the matters before the Court. He voiced no objection to the relief sought by Shipyard and stated that he did not wish to review any proposed order before it was submitted to the Court.

Accordingly, after sufficient notice and an opportunity to be heard provided, and without objection, the Court granted the Motion to Compel. As noted above, the Contempt Order was signed by the Court on July 30, 2013, and entered July 31, 2013.

On July 30, 2013, Denison filed his Certification (the "Certification") of Christopher W. Denison in Opposition to [Shipyard's] Motion for Contempt and to Demonstrate Inability to Pay [ECF 713]. This Certification[1], filed more than two months after the Motion to Compel, and a full week after the hearing on the Motion to Compel, states that Denison caused payments to be made by Marine Realty (in an unspecified amount) to a business owned by his son on September 15,

---

[1] The Court became aware of the Certification only after the filing of the Motion for Reconsideration.

2010,[2] at a time when he and Marine Realty owed ***and had agreed to pay*** some $19,000 to Shipyard under the Agreed Order. He certifies that Marine Realty "partially repaid loans to Fred Chouinard, which was necessary to save a relationship with a client who had previously purchased three properties through" Marine Realty. The dates and amounts of those payments are unspecified. He certifies that his wife and he "regularly tithe to our church," again in unspecified amounts and on unspecified dates. And he claims that neither he nor Marine Realty have the ability "to make any significant payments toward the obligation owed" to Shipyard.[3]

Of course, the time to object to the entry of the Contempt Order was at the hearing on the Motion to Compel on July 23, 2013, at which Denison's and Marine Realty's lawyer Mr. Gleason was present but voiced no objection to the relief sought. Indeed, Mr. Gleason appeared to be completely indifferent. The Certification says that Denison had "agreed," as of July 1, 2013, "to let Mr. Gleason discontinue his representation of [Marine Realty] and me." He claims that he failed to attend the July 23rd hearing on the Motion to Compel because his receptionist "did not print the entire attachment [to an email from Mr. Gleason] and omitted the notice of hearing. I would have attended had I known about the hearing. I would have asserted my inability to pay." Denison claims his absence from the hearing was "due to excusable neglect."

Denison's claim that he "agreed to let Mr. Gleason discontinue his representation" on July

---

[2]This payment was made exactly one week before the deadline, extended at Denison's request, for the first installment payment to Shipyard under the Agreed Order.

[3]Denison appears to contend (Certification, ¶ 6) that because he and Marine Realty were unable to pay the ***entire*** amounts required to be disgorged, they were not "permitted or required" to make "partial payments or installments," apparently asserting that if they are unable to pay ***all*** amounts they have been ordered to pay, they are not required to pay ***any*** of those amounts, even those they had agreed to pay. This current position is directly contradictory to Denison's request that the first installment payment due Shipyard under the Agreed Order be extended from July 15, 2010, to September 22, 2010.

-4-

1, 2013, stands in stark contrast to Mr. Gleason's actions. The Motion to Compel had been filed almost six weeks before, on May 23rd, and the hearing on the Motion to Compel had been rescheduled from June 18th to July 23rd at Mr. Gleason's request. Denison was completely on notice of the July 23rd hearing date and time. He acknowledges that Mr. Gleason sent him the hearing notice and Mr. Gleason (who has still not filed a motion to withdraw or for substitution as counsel) was present at the hearing and raised no objection.

Before the Court now is Denison's Motion for Reconsideration of the Contempt Order filed by Mr. Gleason. There is no excusable neglect here. Denison is charged with notice of the hearing on the Motion to Compel and his lawyer, who was present at the hearing, voiced no objection to the relief sought and even declined the opportunity to review the proposed order, which granted precisely the relief which had been sought in the Motion to Compel.

The purpose of the Contempt Order, as with any civil contempt sanction, is to coerce compliance. It is clear that Denison, as expressed by Mr. Jennings at the July 23rd hearing, "thumbed his nose" at the Court and willfully ignored and disobeyed the Agreed Order and the Disgorgement Order, making payments to relatives and to favored creditors and others, and pursuing frivolous appeals from the Disgorgement Order all the way to the Supreme Court, while ignoring orders to pay Shipyard. It is patently clear that Denison and Marine Realty are in violation of these Orders. Denison admits as much. Consequently, the burden has shifted to him and Marine Realty to show a present inability to comply that goes beyond a mere assertion of inability. *Howard Johnson Co. v. Khimani,* 892 F.2d 1512, 1516 (11th Cir. 1990).

All that is before me in the Motion for Reconsideration and the Certification are mere assertions of inability to pay after making payments to favored persons. Accordingly, it is

**ORDERED** that the Motion for Reconsideration is **DENIED,** without prejudice to the filing

motion(s) seeking relief from the Contempt Order which demonstrate a present and complete inability to pay.

###