**Tagged for publication**



**ORDERED in the Southern District of Florida on September 13, 2013.**

**John K. Olson, Judge**
**United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**
**www.flsb.uscourts.gov**

**In re**:

        **New River Dry Dock, Inc.**,

               Debtor.

_____/

Case No. 06-13274-JKO

Confirmed Chapter 11

**ORDER DENYING IN PART DENISON'S SECOND MOTIONS [ECF 719] TO**
**VACATE WRIT OF BODILY ATTACHMENT AND CONTEMPT ORDER,**
**SETTING FURTHER HEARING ON OCTOBER 8, 2013,**
**AND DIRECTING THE UNITED STATES MARSHAL**
**TO RELEASE CHRISTOPHER DENISON FROM CUSTODY**

       This case came before the Court on September 13, 2013, on the Second Emergency Motion

to Vacate Writ of Bodily Attachment and Order Adjudging Christopher "Kit" Denison ("Denison")

in Contempt [ECF 719], as Supplemented [ECF 740] (together, the "Motion").  The Motion seeks

relief from three orders entered by this Court: the Order adjudging Denison to be in contempt [ECF 714], the Order denying Denison's motion to vacate that contempt order [ECF 718], and the Order [ECF 734] denying Denison's Second Motion to vacate the writ of bodily attachment and setting that Motion for evidentiary hearing on September 13, 2013 (collectively, the "Contempt Orders"). The Court will not reiterate here what it ruled in the Contempt Orders.

## The Disgorgement Orders

The essence of those Orders, however, was that Denison was in contempt of this Court's Orders [ECF 451, 532 and 595] (collectively, the "Disgorgement Orders") which required him to repay a real estate commission obtained by him as a result of his fraudulent misrepresentations to the Court. The Disgorgement Orders were affirmed by the District Court and the Court of Appeals, and Denison's petition for entry of a writ of certiorari was denied by the Supreme Court.

Significantly, the Disgorgement Orders were not money judgments. They were, instead, exercises of this Court's exclusive jurisdiction over the award and payment of professional fees under 11 U.S.C. §§ 328 and 330. As provided in relevant part in § 328(c):

> ... the court may deny allowance of compensation for services and reimbursement of expenses of a professional person ... if, at any time during such professional person's employment ... such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

Denison was employed by the Debtor to sell its marina property and received a commission of some $535,000. In the application to employ him and his company Marine Realty, Inc., as marina broker, Denison claimed that he was disinterested. He was not. He was instead a partner in the ultimate purchaser of the marina, agreed to kick back part of his fee to the buyer, and was engaged to manage the marina by the buyer (in which he held an ownership interest).[1] Denison was still

---

[1]The very name of the purchaser – SKID-SPV – demonstrates the brazen nature of Denison's fraudulent conduct. "SKID" is a conjunction of the initials of the partners in the buyer, Steve

managing the marina at the time of his apprehension in August 2013.

## Subject Matter Jurisdiction

Denison's new counsel,[2] Robert F. Reynolds ("Mr. Reynolds"), argues in the Supplemental Motion [ECF 740] that this Court is without subject matter jurisdiction over the enforcement of the Disgorgement Orders, seeking to apply the *Pacor/Lemco Gypsum* line of cases, which, in general terms, limit the jurisdiction of a bankruptcy court over civil actions which could have no effect on the estate of the debtor. *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3rd Cir. 1984); *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784 (11th Cir. 1990). Of course, if the Court lacks subject matter jurisdiction, as it would over civil disputes between two non-debtor parties after the debtor's estate has been fully administered, it could not act to enforce such a dispute. But this is not what the Denison contempt issues are all about. There is here no money judgment enforceable under Federal Rule of Bankruptcy Procedure 7069, applying Federal Rule of Civil Procedure 69, which in turn would make Florida state court execution remedies available.[3]

Denison's conduct at issue here is his unjustified refusal to disgorge professional fees paid to him as a direct result of his fraud on this Court. The Disgorgement Orders here are the legal equivalent of injunctions: Denison was ordered to repay money he fraudulently obtained from the estate. The bankruptcy court has unquestioned authority to enforce its own orders regarding administration of the estate. *Local Loan Co. v. Hunt,* 292 U.S. 234 (1934). The bankruptcy court

---

Israel and Kit Denison. The entity was a special purpose vehicle ("SPV") for the fraud.

[2]Mr. Reynolds has also appeared for Denison's company, Marine Realty, Inc.

[3]Curiously, in light of Denison's newly-taken position that this Court is without jurisdiction, Denison had previously indicated that he "would consent to converting the [Disgorgement Orders] to judgments to be collected in the usual fashion" [ECF 717, p.3; ECF 719, p. 2]. This position has apparently been abandoned with the appearance of Mr. Reynolds as new counsel. In any event, lack of subject matter jurisdiction can be raised at any time.

possesses the inherent power to sanction contempt of its orders. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 50 (1991); *Alderwoods Group, Inc. v. Garcia,* 682 F.3d 958, 970 (11th Cir. 2012).

Moreover, the power to sanction contempt is itself jurisdictional. *Id.,* citing *In re Debs,* 158 U.S. 564, 594-95 (1895):

> [T]he power of a court to make an order carries with it the equal power to punish for disobedience of that order, and the inquiry as to the question of disobedience has been, from time immemorial, the special function of the [ordering] court ... To submit the question of disobedience to another tribunal ... would operate to deprive the proceeding of half its efficiency ... [T]he sole adjudication of contempts, and the punishments thereof [belong] exclusively ... to each respective court.

What Denison now asks this Court to do is to rule that it is without jurisdiction to enter orders of coercion to enforce the Disgorgement Orders, the propriety of which have been upheld through every level of appellate review in the federal court system. Since there is no other court with jurisdiction over the issues arising from Denison's contempt, what Denison actually seeks is a free pass, evidently believing that by running out the clock, he can escape from any legal consequences of his fraudulent and contumacious conduct. Denison's notion that he can get away with his fraud – and that there is nothing that this Court can do about it – is antithetical to the orderly administration of justice.

**Interim Relief**

There is no doubt that Denison is in contempt. He willfully ignored and disobeyed the Disgorgement Orders, making payments to relatives and to favored creditors and others, while ignoring orders to disgorge fees fraudulently obtained. Denison admits as much. The burden shifted to him to show a present inability to comply that goes beyond a mere assertion of inability. *Howard Johnson Co. v. Khimani,* 892 F.2d 1512, 1516 (11th Cir. 1990).

This Court has repeatedly ruled that Denison bears this burden [ECF 718, ECF 734]. Mr. Reynolds acknowledged that the burden of going forward with evidence of inability to pay is borne

by his client. To date, Denison has presented no evidence beyond mere assertions of inability. He has made no accounting of what he did with the $500,000 paid to him and his company as a result of his fraudulent conduct.

At the September 13th hearing, Mr. Reynolds offered to remit to Robert L. Jennings, counsel for Marina Mile Shipyard, Inc.,[4] the sum of $20,000 currently in Mr. Reynolds' trust account and held for Denison's benefit, as evidence of a good faith attempt at partial compliance with the Contempt Orders, and conditioned on Denison's release from the custody of the United States Marshal until a further hearing on Denison's Motion [ECF 719, 740]. Marina Mile Shipyard, Inc. consented to this offer and it is acceptable to the Court.

### Direction to the United States Marshal to Release Denison

Pursuant to the agreement of the parties, and with the Court's consent, the United States Marshal is to release Denison as soon as possible.

Based upon the foregoing, it is **ORDERED**:

1.      Denison's Second Emergency Motion to Vacate Writ of Bodily Attachment and Order Adjudging Christopher "Kit" Denison ("Denison") in Contempt [ECF 719], as Supplemented [ECF 740] is **DENIED** to the extent that it seeks a determination that this Court is without subject matter jurisdiction to enforce the terms of the Disgorgement Orders, through the Contempt Orders heretofore entered or otherwise.

2.      Denison's Second Emergency Motion to Vacate Writ of Bodily Attachment and Order Adjudging Christopher "Kit" Denison ("Denison") in Contempt [ECF 719], as Supplemented [ECF 740] is set for further evidentiary hearing on **October 8, 2013, at 9:30 a.m.** in Courtroom 301,

---

[4]Marina Mile Shipyard, Inc. is the entity entitled to receive payment of any contempt sanction here pursuant to prior orders of this Court.

United States Courthouse, 299 East Broward Boulevard, Fort Lauderdale, Florida 33301.

3.      The United States Marshal is **DIRECTED** to release Christopher "Kit" Denison from custody as soon as administratively possible.

4.      Christopher "Kit" Denison and all other persons subpoenaed to appear before this Court in this case on September 13, 2013, are hereby **DIRECTED** to appear before this Court on **October 8, 2013, at 9:30 a.m.**

**5.**      Robert F. Reynolds is **DIRECTED** to wire $20,000 currently in his trust account for the benefit of Denison to Robert L. Jennings' trust account for the benefit of Marina Mile Shipyard, Inc. no later than September 16, 2013.

###